**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| JXN UNDIVIDED COALITION; MISSISSIPPI VOTES; PEOPLE'S ADVOCACY INSTITUTE; MISSISSIPPI POOR PEOPLE'S CAMPAIGN; BLACK VOTERS MATTER; RUKIA LUMUMBA; DANYELLE HOLMES; AREKIA BENNETT-SCOTT,<br><br>        Plaintiffs,<br><br>                v.<br><br>SEAN TINDELL, in his official capacity as Commissioner of the Mississippi Department of Public Safety; and BO LUCKEY, in his official capacity as Chief of the Capitol Police, a unit of the Mississippi Department of Public Safety,<br><br>        Defendants. | **Civil Action No.** <u>3:23-cv-351-</u>TSL-RPM |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This year, Mississippi made peaceful protests on public sidewalks and streets next to state government buildings in Jackson illegal without prior written permission from one of two state officials. The new law, Section 1(6)(c) of S.B. 2343, which amends Miss. Code Ann. 45-1-19, is an unconstitutional prior restraint that does not further a constitutionally sufficient or permissible government purpose. Those who peacefully protest without state government authorization and who are charged with crimes for doing so may be prosecuted and sentenced to prison. This chills protected speech.

1

2.      This lawsuit is brought by organizations and citizens of Jackson who have peacefully protested in the past on sidewalks and streets adjacent to state government buildings and intend to do so again in the future, including soon after this new written permission requirement takes effect on July 1, 2023. They seek declaratory relief and a preliminary and permanent injunction to prevent its enforcement. The suit is brought against those two officials, the Commissioner of the Department of Public Safety and the Chief of its subsidiary organization, the Office of Capitol Police.

### JURISDICTION & VENUE

3.      This action is brought pursuant to 42 U.S.C. § 1983.

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).

5.      The Defendants are in Hinds County, Mississippi, and in the Southern District of Mississippi, and the events giving rise to this complaint occurred there; therefore, venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

6.      This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

7.      Venue is properly set within the United States District Court for the Southern District of Mississippi pursuant to 28 U.S.C. § 1391.

### PARTIES

#### *Plaintiffs*

8.      A group of organizations and individuals brought this suit. The individuals, along with the organizations, Mississippi Votes, People's Advocacy Institute, Mississippi Poor People's

Campaign, and Black Voters Matter, are each a member of the JXN Undivided Coalition (the Coalition). The Coalition was founded to resist state takeover of rights and resources of residents of Jackson, which is a majority-Black and Black-led city. The Coalition stands for supporting— through protests, other direct actions, and community and legal engagement—the right to vote and the right of political self-determination for Jackson residents. The Coalition and its members have often in the past protested in and beside places occupied by Mississippi state entities or officials in Jackson. For example, the Coalition and its members gathered at the Capitol on January 31, 2023, February 27, 2023, and March 14, 2023, to support Jackson's right to political self-determination and oppose state government actions that would dilute the political power of Black voters. The Coalition and its members plan to continue to protest on sidewalks and streets in Jackson, next to state government buildings, in the future, including during July of 2023. For example, the Coalition plans to protest by such properties, including the State Capitol, the Mississippi Supreme Court, and the Governor's Mansion, during actions on July 6, 8, 18, and 27, 2023, which Plaintiffs hope to publicize and support.

9.      Plaintiff Mississippi Votes, led by Plaintiff Arekia Bennett-Scott, is a nonprofit organization led by young people that registers people to vote, organizes and encourages civic engagement, and educates communities on voting rights through grassroots organizing, programming, and outreach strategies that empower young people. Mississippi Votes and Mrs. Bennett-Scott have in the past conducted voter education and voter registration in and by properties occupied by Mississippi state entities or officials in Jackson. They have also protested on sidewalks and streets in Jackson next to such properties. They plan to continue both types of activities, in those places, in the future, including during July of 2023. For example, Mississippi Votes plans to protest by such properties, including the State Capitol, the Mississippi Supreme Court, and the

3

Governor's Mansion, during Coalition actions on July 6, 8, 18, and 27, 2023. Mississippi Votes and Mrs. Bennett-Scott also hope to help publicize these actions. Both plaintiffs are co-organizing the Coalition event on July 18, 2023. During it, Coalition members, including Mississippi Votes and Mrs. Bennett-Scott, plan to gather on the sidewalk on the north curb of High Street between North West Street and North President Street, in front of the Mississippi Supreme Court and the Attorney General's office building. Protesters will march south on the sidewalk along the east side of the State Capitol, then march west on the sidewalk along the south side of the State Capitol. At the corner of North Congress Street and Mississippi Street, protesters will march down North Congress Street until it intersects with East Capitol Street. Protesters will then rally in front of the Governor's Mansion.

10.     Plaintiff People's Advocacy Institute (PAI), led by Plaintiff Rukia Lumumba, is a nonprofit resource, training, and community capacity-building organization that focuses on engaging communities in electoral justice efforts, People's Assemblies, and on initiatives to build alternatives to incarceration and implement community-led solutions to violence. PAI also helps lead the Electoral Justice Project of the Movement for Black Lives. PAI and Ms. Lumumba have often in the past protested on sidewalks and streets in Jackson next to properties occupied by Mississippi state entities or officials. They plan to continue to do so in the future, including during July of 2023. For example, PAI plans to protest by such properties, including the State Capitol, the Mississippi Supreme Court, and the Governor's Mansion, during Coalition actions on July 6, 8, 18, and 27, 2023. PAI and Ms. Lumumba also hope to help publicize these actions. Both plaintiffs are co-organizing the Coalition event on July 6, 2023. PAI's staff and supporters are comprised in part of people who were incarcerated and now work to end violence in their communities, including through leading intensive youth mentorship and diversion programs. Those who remain

4

under supervision bear uniquely serious risks if arrested and charged with a crime for engaging in protected speech activities, including parole revocation and long-term detention or incarceration.

11.      Plaintiff Mississippi Poor People's Campaign (MS PPC), led by Plaintiff Danyelle Holmes, is a nonprofit founded on religious and democratic values that seeks to unite Mississippians to challenge systemic racism and poverty. In recent years, MS PPC has organized rallies and marches outside of government buildings in downtown Jackson. These generally include prayer. For example, on September 26, 2022, October 10, 2022, and October 31, 2022, MS PPC organized Moral Mondays, each consisting of a march and rally by state government buildings. They integrated prayer and discussion of biblical mandates as part of the protests. The events called on the Governor and state government officials to address a clean drinking water crisis in Jackson. On each of those three dates, MS PPC led a march of approximately two hundred people east from the general area of East Church Street and High Street to the corner of High Street and North Lamar Street. The protesters marched south on North Lamar Street, turned onto East Capitol Street, and marched east to the Governor's Mansion, where they held a rally that included speakers and prayer. The protest route was adjacent to publicly and privately owned buildings. For example, the Woolfolk State Office Building and Governor's Mansion are state owned; Region's Plaza, a commercial office building, may be occupied in part by state government entities or officials. MS PPC and Ms. Holmes plan to continue to protest on sidewalks and streets in Jackson, next to state government owned and occupied buildings, in the future, including during July of 2023. For example, MS PPC plans to protest by such properties, including the State Capitol, the Mississippi Supreme Court, and the Governor's Mansion, during Coalition actions on July 6, 8, 18, and 27, 2023. MS PPC and Ms. Holmes also hope to help publicize these actions. Both plaintiffs are co-organizing the Coalition event on July 8, 2023.

12.     Plaintiff Black Voters Matter (BVM) is a nonprofit organization dedicated to building electoral and political power for Black and marginalized communities. BVM has often in the past protested on sidewalks and streets in Jackson next to properties occupied by Mississippi state entities or officials. It plans to continue to do so in the future, including during July of 2023. For example, BVM plans to protest by such properties, including the State Capitol, the Mississippi Supreme Court, and the Governor's Mansion, during Coalition actions on July 6, 8, 18, and 27, 2023. BVM also hopes to help publicize these actions, each of which will take place on sidewalks and streets in downtown Jackson next to government buildings.

*Defendants*

13.     Defendant Sean Tindell is the Commissioner of the Mississippi Department of Public Safety (DPS) and is sued in his official capacity. As Commissioner, Tindell is responsible for the operation of the DPS and its subdivisions, including the Office of Capitol Police. In his capacity as Commissioner, Tindell is responsible for ensuring compliance with the United States Constitution and federal laws at DPS and the Office of Capitol Police. References to DPS herein also refer to Commissioner Tindell.

14.     Defendant Bo Luckey is Chief of the Capitol Police, which is a unit of DPS. He is sued in his official capacity. In that capacity, he is responsible for the operation of the Capitol Police and is responsible for ensuring compliance with the United States Constitution and federal laws at and within the Capitol Police. References to Capitol Police herein also refer to Defendant Luckey.

15.     The challenged law requires the written permission of Tindell or Luckey (or their successors) before a protest is conducted on a street or sidewalk adjacent to a building owned or

occupied by state government officials. The actions of these Defendants and their agents to effectuate the challenged law would be state action and undertaken under color of state law.

## GENERAL ALLEGATIONS

16.     The City of Jackson, the state's majority-Black capital city, is at the heart of a resurgence in recent years of protests against the state government and its officials. Plaintiffs have participated in and led demonstrations and protests on public sidewalks and streets next to state government buildings in Jackson to communicate their social and political views to state officials. These include their views on the need to protect the electoral and political power of Black and marginalized communities in Mississippi, and their opposition to attempts by the state to take control of resources belonging to the City of Jackson and Hinds County, whose residents are majority-Black, and who generally elect Black candidates for public office.

17.     Recent protests have focused on various measures to remove or dilute certain powers from the majority-Black local governments and elected officials. These measures have included the dramatic expansion of the authority and jurisdiction of DPS and its subsidiary organization, the Office of Capitol Police, regarding law enforcement functions previously reserved to the city and the county. As the protests in Jackson against the state government have grown, the majority-white state legislature has pushed back. This session, Mississippi passed S.B. 2343(1)(6)(c), which is designed to suppress political speech in Jackson against the state government by requiring that no event, including a protest, at a "street or sidewalk immediately adjacent to any building or property owned or occupied by any official, agency, board, commission, office or other entity" of the state government, can be held absent written approval from the Commissioner of Public Safety or the Chief of the Capitol Police.  These two officials, both white men, will now have veto authority over protests that have included, and will continue

to include, criticisms of their own expanded authority and actions as well as that of other state

officials.

18.    The new law is two sentences long and reads as follows:

(c)  Written approval from the Chief of the Capitol Police or the Commissioner of the Department of Public Safety shall be required before ***any event*** occurs ***which will take place*** on any street or sidewalk immediately adjacent to any building or property owned or occupied by any official, agency, board, commission, office or other entity of the State of Mississippi, ***or which can*** reasonably be expected to block, impede or otherwise hinder ingress thereto and/or egress therefrom.  The Department of Public Safety shall promulgate rules and regulations to effectuate the provisions of this paragraph (c).

S.B. 2343(1)(6)(c) (emphasis added).

19.    This lawsuit challenges S.B. 2343's requirement of written permission from one of

these officials as an unlawful prior restraint on speech under the First Amendment. Among other

things, the requirement does not further a substantial, compelling, or permissible government

purpose. Indeed, no such requirement has been needed in the past because the City of Jackson's

permitting scheme for marches and other special events has always been sufficient. The

requirement will overlap with Jackson's scheme and in many instances will require that certain

protesters—those wanting to communicate their views to state officials next to the buildings where

they conduct official state business—obtain two licenses to speak. Protesters with a message meant

for other individuals, like local or federal government officials, or even private commercial

entities, will not be so burdened. The law controls speech on city sidewalks and streets next to

government buildings in Jackson, but it does not regulate speech on indistinguishable sidewalks

and streets elsewhere in Jackson. Because the overall bill relates to the Capitol Police jurisdiction

in Jackson and specifically names the Chief of the Capitol Police, the written permission

requirement appears to restrict speech next to state government buildings only in Jackson, and not

next to state government buildings anywhere else in Mississippi. Protests in recent years against

8

the state government in Jackson, on sidewalks and streets next to state government buildings, have not resulted in violence or destruction. These protests, including some that were fairly large, have been peaceful and garnered significant attention from the public and the press. These and other facts demonstrate that this law was adopted absent a substantial government purpose and/or because of disagreement with the message conveyed by protesters against the state government.

20.     The new law directs DPS to promulgate rules and regulations to effectuate the written permission requirement, and it provides the agency with unbridled and unfettered discretion when doing so. However, the law has fatal constitutional flaws that cannot be fixed by any set of rules or regulations. By imposing this unnecessary burden on people who protest state government on public sidewalks and streets next to property owned or occupied by state officials, it targets and encompasses those who engage in protests that are critical of state government.

21.     Because the law is specifically connected to a particular audience—the state officials who occupy particular properties—the law works as a content-based restriction. It also is content based because a portion of the law relies on the reaction of listeners and whether they can "reasonably be expected to . . . hinder ingress thereto and egress therefrom" government buildings. Because the law does not further a compelling government interest, no set of subsequent agency rules or regulations can cure this violation of the First Amendment.

22.     Those who protest in violation of this unnecessary and unconstitutional written permission provision may find themselves subject to arrest, prosecution, and conviction by the Capitol Police and a new special court for the Capitol Complex Improvement District and, due to an unprecedented provision of another bill recently signed into law, may be placed in the custody

of the Mississippi Department of Corrections and sent to a state prison rather than the local jail.[1]

Not only does this harken back to a time in the early 1960's when freedom riders were arrested

and sent to Parchman prison,[2] but it illustrates the elevated burdens imposed upon those who

demonstrate against state government at state-owned and occupied properties.

23.     For these reasons, the new law is facially unconstitutional and should be enjoined

irrespective of any rules and regulations that might later be adopted.

24.     To the extent any new rules and regulations promulgated by DPS—the very entity

whose unfettered discretion is at issue—are relevant, there is no deadline set for the rules and

regulations, no assurance they will be in place by July 1, 2023, which is the effective date of the

new law, and no assurance they will comply with the First Amendment and cure the obvious

constitutional violations that exist on the face of new law. On its face, the written permission

requirement gives these two officials unbridled discretion over who is allowed to hold events and

who is not.

25.     Further, the law does not identify any governmental interest that it serves, and it is

not narrowly tailored to serve a substantial or compelling governmental interest. No such

---

[1] SB 2343 also amends Section 45-1-19(6)(a) to provide that the Department of Public Safety "shall have primary jurisdiction relative to any other state or municipal law enforcement agency to enforce all laws of the State of Mississippi within the boundaries of the Capitol Complex Improvement District" and "may . . . make arrests for any violation of any law of the State of Mississippi and violation of the City of Jackson's traffic ordinances or ordinances related to disturbance of the peace which occurs within the boundaries of the district and within the boundaries of the City of Jackson" and "may choose to present cases to either the District or the prosecuting attorneys designated by the Attorney General for any violation of law . . . within the boundaries" of the Capitol Complex Improvement District (CCID). S.B. 2343(1)(6)(a). House Bill 1020 of the 2023 legislative session, also signed by the Governor, provides in Section 4(1)(a) that any such arrests within the boundaries of the CCID, which is substantially comprised of property owned or occupied by officials and entities of the State of Mississippi, may be prosecuted in a new so-called "CCID inferior court." Section 4(1)(b) provides that "[a]ny person convicted in the CCID inferior court may be placed in the custody of the Mississippi Department of Corrections, Central Mississippi facility." H.B. 1020(4)(1)(a)-(b).

[2] *See, e.g.,* Lici Beveridge and Justin Victory, "Rep. John Lewis spent 37 days at Parchman as a Freedom Rider for Mississippi civil rights," *Clarion Ledger* (July 18, 2020).

requirement has been needed in the past and the City of Jackson's permitting scheme for marches and other special events has always been sufficient. Nothing has happened to change that. The new permission requirement, which will encompass traditional public forums in a large area of Jackson, will overlap with Jackson's scheme and, in many instances, require protesters to undertake the burden of obtaining two permits.  On its face, the law is also vague and overbroad. For example, it encompasses even small gatherings of a few people. Also, while some state government buildings and buildings occupied by state officials are clearly marked, others are not. In many situations, people will not know which of Jackson's many office or other properties are currently "owned or occupied" by any state official "or other entity of the state." Accordingly, even if the Court does not enjoin the law on its face, the Court should, at the very least, enjoin the implementation of the law pending an opportunity to review those rules and regulations if and when they are promulgated.

26.     The law goes into effect on July 1, 2023. This lawsuit is brought by organizations and individuals who have protested the state government in the past and will again in the future, including during protests in July of 2023 that will occur on sidewalks and streets adjacent to property occupied by state officials. Organizing and participating in expressive activities and prayer next to state government buildings is a foundational means by which Plaintiffs attempt to educate and influence lawmakers, build electoral and political power, and organize their members and supporters, particularly in support of Black and marginalized communities. Their actions have included registering people to vote, marching, hosting speakers, praying together, distributing electronic and physical flyers, holding signs, educating people about their legal rights, submitting petitions to officials, and engaging in symbolic speech.

27.     Plaintiffs protest in and beside places occupied by the state government so that, among other things, their message may be seen and heard by Mississippi state officials and so that the public will understand the protest is directed toward state officials. This law, and the prospect of arrest, prosecution, conviction, and imprisonment, possibly in a state prison, all have a chilling effect on the Plaintiffs. This lawsuit seeks declaratory relief and a preliminary and permanent injunction against the new law. Absent an injunction, Plaintiffs' speech about their July 2023 month of direct actions has been and will continue to be chilled, their peaceful protest activities in July of 2023 and beyond will be chilled, and those who choose to violate the provision could be arrested, prosecuted, convicted, and imprisoned for activities later held to the protected by the First Amendment.

## VIOLATIONS

28.     The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits the State of Mississippi from "abridging the freedom of speech . . . or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. 1.

29.     This law violates the First Amendment and Plaintiffs' well-established First Amendment rights to the freedom of expression, assembly, association, petition, and, for those who pray as part of their protest, the free exercise of religion.

30.      The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

31.     Certain aspects of this law violate the Equal Protection Clause as well as the First Amendment because the law unjustifiably treats similarly situated speech differently. It targets

speech directed toward and against the state government and state officials; it imposes burdens on speech on streets and sidewalks adjacent to state-occupied buildings not imposed on other streets and sidewalks; and to the extent it burdens speech adjacent to state-occupied buildings in Jackson and not elsewhere in Mississippi, for that reason, also.

32.     The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits the State of Mississippi from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.

33.     Certain aspects of the law violate the Due Process Clause as well as the First Amendment because it is vague and overbroad.  The law does not give adequate warning of what activities it proscribes, nor does it set forth explicit standards for those who must apply it. The law also substantially encompasses expressive activities that the state does not have the authority to regulate through imposition of a prior restraint.

34.     Because Plaintiffs' constitutionally protected speech is already being chilled, these constitutional violations are ongoing and, absent injunctive relief, will continue to be inflicted upon the Plaintiffs by Defendants, including in the immediate future.

35.     The Plaintiffs have no adequate remedy at law and will continue to suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing the prior restraint on speech in S.B. 2343.

**PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiffs pray that the Court will:

A.     Declare that Section 1(6)(c) of S.B. 2343, which adds Section (6)(d) to Miss. Code Ann. 45-1-19, is unconstitutional;

B.     Preliminarily and permanently enjoin Section 1(6)(c) of S.B. 2343;

C.       Grant Plaintiffs' their costs, reasonable attorneys' fees, and other expenses pursuant to 42 U.S.C. §§ 1920 and 1988;

D.       Grant such other and further relief as this Court may deem appropriate and equitable.


Dated: June 1, 2023                                     Respectfully Submitted,


                                                        */s/ Paloma Wu*
                                                        Paloma Wu (Miss. Bar No. 105464)
                                                        MISSISSIPPI CENTER FOR JUSTICE
                                                        210 E. Capitol Street, Ste 1800
                                                        Jackson, MS 39201
                                                        (601) 709-0857
                                                        pwu@mscenterforjustice.org

                                                        *Attorney for Plaintiffs*