# Exhibit 1

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| JXN UNDIVIDED COALITION; MISSISSIPPI VOTES; PEOPLE'S ADVOCACY INSTITUTE; MISSISSIPPI POOR PEOPLE'S CAMPAIGN; BLACK VOTERS MATTER; RUKIA LUMUMBA; DANYELLE HOLMES; AREKIA BENNETT-SCOTT, | |
| Plaintiffs, | **Civil Action No. 3:23-cv-351-TSL-RPM** |
| v. | |
| SEAN TINDELL, in his official capacity as Commissioner of the Mississippi Department of Public Safety; and BO LUCKEY, in his official capacity as Chief of the Capitol Police, a unit of the Mississippi Department of Public Safety, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
## FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... 1

INTRODUCTION ................................................................................................................... 2

ARGUMENT ........................................................................................................................... 6

I.   PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS. ....................................... 6

   A.   The Law Is Facially Invalid Under the First Amendment Because it is a Content-Based Law That Does Not Further a Compelling Government Purpose ............................................... 9

   B.   The Law Is Facially Invalid Because It Does Not Further a Substantial Government Purpose that is Unrelated to Suppressing Speech as Required Under The First Amendment and The Fourteenth Amendment Equal Protection Clause ............................................................... 13

   C.   In the Alternative, the  Prior Restraint Will Violate Plaintiffs' Rights if Implemented Because of Additional Constitutional Infirmities, Including its Vagueness, Overbreadth, and the Unbridled Discretion it Grants Officials; It Should Be Enjoined Pending an Opportunity for the Court to Review Any Rules and Regulations Promulgated. ......................................... 19

II.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE COURT DECLINES TO ISSUE THIS INJUNCTION ................................................................................................... 22

III.   DEFENDANTS WILL SUFFER NO IRREPARABLE HARM IF THIS INJUNCTION ISSUES. ............................................................................................................................... 23

IV.   GRANTING THE INJUNCTION WILL SERVE THE PUBLIC INTEREST ............... 23

CONCLUSION ...................................................................................................................... 24

Plaintiffs respectfully submit this memorandum of law in support of their Motion for a Preliminary Injunction. The Plaintiffs have brought this action under constitutional law against defendants Sean Tindell, Commissioner of the Mississippi Department of Public Safety (DPS, or the administering or enforcing agency), and Bo Luckey, Chief of Commissioner Tindell's Capitol Police force (state police) (collectively Defendants or the state), in their official capacities. Pursuant to L. U. Civ. R. 7(b)(6)(A), Plaintiffs respectfully request oral argument on this Motion. Plaintiffs also incorporate by reference the factual allegations contained in the declarations attached to Plaintiffs' Motion.

## INTRODUCTION

This year, Mississippi made illegal peaceful protests on public sidewalks and streets next to state government buildings in Jackson without prior written permission from state officials. Noncompliance may be punished with a prison sentence, even if the demonstration was duly permitted by the City of Jackson. This chills Plaintiffs' protected speech activities and does not further a substantial or compelling government purpose that is unrelated to suppressing speech. It unjustifiably burdens their First Amendment freedoms of assembly, association, petition, and the free exercise of relgion, and it violates their rights under the Fourteenth Amendment Equal Protection and Due Process Clauses.

The strength of First Amendment protection against government intrusion is at its height when speakers stand on public sidewalks and streets, considered "traditional public forums."[1] This

---

[1] Under First Amendment "forum analysis" jurisprudence, regulations restricting conduct on government property which directly or incidentally restrict constitutionally protected expressive activities, including speech, are first categorized according to the type of "forum"—the type of government property—that the regulation is being applied to. This threshold determination will supply the level of scrutiny to apply in assessing whether the regulation justifiably or unjustifiably burdens speech. Under the forum analysis framework, government property is categorized into one of three forum types—traditional, limited, and nonpublic—depending on its historic use. "Traditional" public forums include 'places which by long tradition or government fiat have been devoted to assembly and debate.' *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983). Typically, these are parks, streets, and

2

strength is at its zenith when people assemble on public sidewalks and streets to engage in political speech. *New York Times Co. v. Sullivan.* 376 U.S. 254, 271 (1964) (discussing this country's "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.").

The law Plaintiffs challenge is two sentences long, in its entirety, and Plaintiffs seek an order preliminary and permanently enjoining both. Senate Bill 2343 amends Section 45-1-19 of the Mississippi Code to provide a new subsection (6)(b) which states:

> (c)  Written approval from the Chief of the Capitol Police or the Commissioner of the Department of Public Safety shall be required before ***any event*** occurs ***which will take place on any street or sidewalk*** immediately adjacent to any building or property owned or occupied by any official, agency, board, commission, office or other entity of the State of Mississippi, ***or which can reasonably be expected to*** block, impede or otherwise hinder ingress thereto and/or egress therefrom.  The Department of Public Safety shall promulgate rules and regulations to effectuate the provisions of this paragraph (c).

S.B. 2343(1)(6)(c) (emphasis added).[2]

Plaintiffs primarily protest near buildings occupied by the state government so that their message of the importance of growing and respecting Black electoral and political power in Jackson and in Mississippi may be seen and heard by Mississippi state officials engaged in state governance. Bennett-Scott Decl., ¶ 5; Branch Decl., ¶ 5; Holmes Decl., ¶ 5; Lumumba Decl., ¶ 5. In this way, they seek to impact the political process and political outcomes in Mississippi. Bennett-Scott Decl., ¶ 7; Branch Decl., ¶ 7; Holmes Decl., ¶ 7; Lumumba Decl., ¶ 7. The Supreme Court "has frequently reaffirmed that speech on public issues occupies the highest rung of the

---

sidewalks. "Limited" public forums are "public property which the State has opened for use by the public as a place for expressive activity." *Id.* In such a forum, "restrictions imposed [must be] reasonable in light of the use to which the building and grounds are dedicated and [there may be] no discrimination on the basis of content." *United States v. Grace*, 461 U.S. 171, 178-79 (1983). "Nonpublic" forums are government properties which have no specific relation to open or free communication. *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. at 45-46.  This case concerns only traditional public forums.

[2] For ease of reference, S.B. 2343(1)(6)(c) will be referred to as "S.B. 2343" despite the fact that S.B. 2343 contains numerous additional provisions.

hierarchy of First Amendment values and is entitled to special protection." *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)).

Plaintiffs have marched, prayed together, submitted petitions to government officials, distributed flyers, hosted speakers, educated community members about their legal rights, registered eligible people to vote, held signs, coordinated to wear matching clothing with protest slogans, and engaged in symbolic protest, like taping one's mouths shut to indicate being silenced, on sidewalks and streets next to state government buildings. *See, generally, e.g.,* Bennett-Scott Decl., ¶ 13; Branch Decl., ¶ 13; Holmes Decl., ¶ 13; Lumumba Decl., ¶ 13. Plaintiffs have demonstrated in small groups on sidewalks without permits and in large groups in city streets next to state government buildings when organizers had a City of Jackson permit. *See, e.g.,* Bennett-Scott Decl., ¶ 6; Branch Decl., ¶ 6; Holmes Decl., ¶ 6; Lumumba Decl., ¶ 6. In general, they have not personally witnessed any property damage, physical violence, or arrests allegedly arising from protester actions, nor have they witnessed events scheduled at the same time due to problems with the City's permitting scheme. *See, e.g.,* Bennett-Scott Decl., ¶ 14-15; Branch Decl., ¶ 14-15; Holmes Decl., ¶ 14-15; Lumumba Decl., ¶ 14-15.

The City of Jackson's existing special events permitting scheme, and the City, sufficiently manage protests and other events on city sidewalks and streets in Jackson. S.B. 2343's requirement will overlap with Jackson's scheme and in many instances will require that certain protesters— those wanting to communicate their views to state officials next to the buildings where they conduct official state business—obtain two licenses to speak. Protesters with a message meant for other individuals, like local or federal government officials, or even private commercial entities, will not be so burdened. S.B. 2343 also places a uniquely targeted burden on the political speech

4

of people in Jackson, as opposed to any other locality in Mississippi, when assembling to pray for, petition, or protest their state government.

S.B. 2343 is a content-based restriction on speech because it cannot be understood or enforced without reference to those occupying the buildings where S.B. 2343 regulates speech. Listener-based laws are content-based laws. *Forsyth County, Georgia v. Nationalist Movement*, 505 U.S. 123, 134-35 (1992). Content-based laws are subject to strict scrutiny, and to survive strict scrutiny a challenged restriction must "be 'actually necessary' to achieve" a compelling interest. *United States v. Alvarez*, 567 U.S. 709, 725 (2012) (citations omitted). S.B. 2343 is unjustifiably and incurably overinclusive and underinclusive. Later-promulgated agency rules and regulations, issued in earnest or as pretext, cannot address that S.B. 2343 regulates political speech in traditional public forums and does not further a government purpose that is substantial, compelling, and/or unrelated to suppressing speech.

Under First Amendment or Fourteenth Amendment Equal Protection Clause jurisprudence, S.B.2343 is subject to and cannot survive intermediate scrutiny. The U.S. Supreme Court has struck down as facially unconstitutional prior restraints containing fatal flaws which are similar to those found in S.B. 2343's differential treatment of speech on various city sidewalks and streets. *See, e.g., United States v. Grace*, 461 U.S. at 179-81 ("The sidewalks comprising the outer boundaries of the Court grounds are indistinguishable from any other sidewalks in Washington, D. C., and we can discern no reason why they should be treated any differently.").

S.B. 2343 restricts the freedom of speech, assembly, association, petition, and the free exercise of religion, yet it provides not a single standard or safeguard to guide DPS's rulemaking, and no deadline by which to do it. While the law gives the agency unfettered and unbridled discretion regarding rulemaking, administration, and enforcement, as of this filing, the Department

of Public Safety has not yet formally initiated the rulemaking process. Accordingly, if this Court disagrees with Plaintiffs that the law is invalid because it does not further a government purpose that is substantial, compelling, and/or unrelated to suppressing speech, the court should, as soon as possible, enjoin the implementation of the law pending an opportunity to review those rules and regulations, if and when they are promulgated, because the naked prior restraint is also unconstitutionally vague and overbroad, and it grants Defendants unbrideled discretion.

**ARGUMENT**

Under Fed. R. Civ. P. 65, this Court must weigh four factors when deciding whether to grant a motion for preliminary injunction. Courts should grant preliminary injunctive relief where the movant can show (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 1998). Balancing the factors in this free speech case clearly weighs in favor of granting the requested injunction. As a prior restraint on speech—a law which stops speech before it is uttered—the law bears "a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Additionally, political events, parades, and protests on public sidewalks and streets are entitled to the highest possible First Amendment protection.

## I.  PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS.

Plaintiffs are likely to prevail on the merits because Defendants carry the burden of proof and persuasion in this First Amendment case, and irreparable harm is legally presumed. *See, e.g. United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of

its actions"); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B Nov. 1981) (The "loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction."). Once Plaintiffs have shown a restraint on free expression, the burden shifts to the government agency to justify the restraint under the relevant First Amendment standard.

Plaintiffs make primary and alternative arguments supporting why they are likely to prevail on the merits. **<u>Primarily</u>**, the prior restraint imposed by the written permission requirement and the sentence directing the agency to effectuate it are unconstitutional because the law does not further a government purpose that is substantial, compelling, and unrelated to suppressing speech under (a) First Amendment strict scrutiny, or (b) intermediate scrutiny under the First Amendment and/or Fourteenth Amendment Equal Protect Clause.

**<u>Alternatively</u>**, Plaintiffs seek a preliminary injunction of the law pending review by the Court to determine if any subsequent rules and regulations can somehow cure S.B. 2343's additional constitutional infirmities, including that it does not give adequate warning of what activities it proscribes, nor does it set forth explicit standards for those who must apply it, and it substantially encompasses expressive activities that the state does not have the authority to regulate through imposition of a prior restraint. S.B. 2343 is therefore unconstitutionally vague, under the Fourteenth Amendment Due Proces Clause, and it violates the First Amendment by being overbroad and granting unbridled discretion to the administering and enforcing agency, DPS.

Plaintiffs in this case are individuals and organizations who regularly demonstrate and protest peacefully next to state government buildings in Jackson, Mississippi, to communicate their views, including of the importance of growing and respecting Black electoral and political power in Jackson and in Mississippi. Bennett-Scott Decl., ¶ 11-12; Branch Decl., ¶ 11-12; Holmes Decl.,

¶ 11-12; Lumumba Decl., ¶ 11-12. This past legislative session, Plaintiffs frequently assembled alongside hundreds of other Mississippians on public sidewalks and streets next to state buildings to peacefully express their opposition to bills which sought to take resources and voting rights away from residents of Jackson and Hinds County, which are over 80% and 70% Black, respectively. Bennett-Scott Decl., ¶ 11-12; Branch Decl., ¶ 11-12; Holmes Decl., ¶ 11-12; Lumumba Decl., ¶ 11-12.

Plaintiffs often purposefully plan for their political demonstrations to take place from public sidewalks and streets next to state government buildings where elected and appointed officials carry out their governance duties because "a listener often encounters speech he might otherwise tune out," and public sidewalks and streets "remain one of the few places where a speaker can be confident that he is not simply preaching to the choir." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014).

Plaintiffs' act of assembling in person and speaking out beside the buildings which seat the state government they seek to petition or influence is powerful political and symbolic speech. It is one among many constitutionally protected expressive activities that Plaintiffs regularly engage in near state government buildings. S.B. 2343 restricts these activities, under threat of imprisonment for noncompliance, and Plaintiffs have been chilled in their organizing and protest promotion activities for future political demonstrations next to state government buildings, including those which they already have planned for July of 2023.[3] *See generally, e.g.,* Bennett-Scott Decl., ¶ 16-20; Branch Decl., ¶ 16-20; Holmes Decl., ¶ 16-20; Lumumba Decl., ¶ 16-21.

---

[3] These include including (a) engaging in "cooperative, organizational activity" through which speakers "seek through lawful means to achieve legitimate political ends," *NAACP v. Button*, 371 U.S. 415, 430-31 (1963)); (b) engaging in "association for the advancement of beliefs and ideas," *id*. (citations omitted); (c) planning for events when others' right against "disclosure of a person's political associations" may be risked by a blanket prior written authorization requirement, *id*.; (d) promoting parades they have planned for July of 2023, *Hurley v. Irish-American Gay, Lesbian*

Plaintiffs seek to be able to continue to access the traditional public forums of city sidewalks and streets next to government buildings absent prior written authorization from the state. A prior restraint on speech is one that stops speech, including a particular message, from being uttered. *Ward v. Rock Against Racism*, 491 U.S. 781, 795 n.5 (1989) ("[T]he regulations we have found invalid as prior restraints have had this in common: they gave public officials the power to deny use of a forum in advance of actual expression.") (citations omitted). S.B. 2343, as a prior restraint, bears a heavy burden against its constitutional validity. *Bantam Books, Inc. v. Sullivan*, 372 U.S. at 70 (1963) ("Any system of prior restraints of expression comes [before the United States Supreme Court] bearing a heavy presumption against its constitutional validity."). The law likewise bears a heavy burden against its validity because it restricts speech in traditional public forums and, because it targets forums by state government buildings, it primarily burdens political speech.

## A. The Law Is Facially Invalid Under the First Amendment Because it is a Content-Based Law That Does Not Further a Compelling Government Purpose

Plaintiffs are likely to prevail on the merits because S.B. 2343 is content based, is subject to strict scrutiny, and does not further a compelling government interest.

A law which is content neutral on its face should be considered content based, and therefore subject to strict scrutiny, if it discriminates on the basis of subject matter, the speaker or viewpoint, or the likely audience or listener. The Court need only look at the operation of the law to determine whether the law is content based. "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus

---

and Bisexual Group of Boston*, 515 U.S. 557, 568-69 (1995) (parades are constitutionally protected expression); (e) promoting leafletting during their parade planned for July of 2023, *United States v. Grace*, 461 U.S. at 176-77 (leafletting is a constitutionally protected speech activity); and (f) promoting the display of signs during July 2023 protest activities next to state government property, *Boos v. Barry*, 485 U.S. 312, 318 (1988) (displaying signs is a constitutionally protected speech activity).

toward the ideas contained' in the regulated speech." *Reed v. Town of Gilbert*, 576 U.S. 155, 156 (2015) (citing *Cincinnati v. Discovery Network, Inc.*, 507 U. S. 410, 429 (1993)). "'The vice of content-based legislation . . . is not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes.'" *Id.* at 167 (citing *Hill v. Colorado*, 530 U. S. 703, 743 (2000) (Scalia, J., dissenting)).

As explained by the Supreme Court in *Reed*:

Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. *E.g., Sorrell v. IMS Health, Inc.,* 564 U. S. 552, 263-565 (2011); *Carey v. Brown*, 447 U. S. 455, 462 (1980); *Mosley*, supra, at 95. This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. Sorrell, supra, at 564. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

Our precedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be "'justified without reference to the content of the regulated speech,'" or that were adopted by the government "because of disagreement with the message [the speech] conveys," *Ward v. Rock Against Racism*, 491 U. S. 781, 791 (1989). Those laws, like those that are content based on their face, must also satisfy strict scrutiny.

576 U.S. at 163-164.

In terms of what the Supreme Court in *Reed* called "function" and "purpose," the new written permission regime turns entirely on occupancy by state officials. Not time, place, or manner. But audience. The identity of the occupant defines to which properties the regulation applies, which in turn determines whether Plaintiffs are vulnerable to arrest and imprisonment for protesting adjacent to that property absent prior written authorization from Defendants. Because the law is specifically connected to a particular audience—the state officials who occupy particular properties—the law works as a content-based restriction.

10

The First Amendment treats with deep suspicion laws that burden speech on the basis of who is likely to hear it, especially when the "who" is the very government seeking to regulate it. The Supreme Court held, years ago, that a law which turns on the identity of the listener is a content-based law, and a law which vests in the administrative agency unfettered discretion to grant or deny permission to speak is unconstitutional. S.B. 2343's prior restraint is both. *See, e.g., Forsyth Cty. v. Nationalist Movement*, 505 U.S. at 136 (holding that a permitting ordinance which "charge[ed] a premium in the case of a controversial political message delivered before a hostile audience," to account for the additional cost of providing effective security, was a content-based law). Thus, listener-based laws are content-based laws. The function and the purpose of this law is to burden speech directed to state officials.

Moreover, no written permission requirement has been needed in the past because the City of Jackson's permitting scheme for marches and other special events has always been sufficient. Nothing has happened to change that. Protests in recent years against the state government in Jackson, on sidewalks and streets next to state government buildings, have not resulted in violence or destruction. These protests, including some that were fairly large, have been peaceful and garnered significant attention from the public and the press. These peaceful protests continued during the 2023 legislative session as Jackson citizens demonstrated against various bills passed by the legislature to dilute the political power of Jackson residents. The legislature responded with this written permission requirement.

This targeting of protests against state officials is reinforced by the fact that protesters with a message meant for other individuals, like local or federal government officials, or even private commercial entities, will not be so burdened. The law controls speech on city sidewalks and streets next to state government buildings in Jackson, but not city government or federal government

buildings.  And it does not regulate speech on indistinguishable sidewalks and streets elsewhere in Jackson.[4]

These and other facts demonstrate that the written permission requirement is content based, and therefore subject to strict scrutiny.

"It is rare that a regulation restricting speech because of its content will ever be permissible." *Brown v. Entm't Merchs. Ass'n,* 564 U.S. 786, 799 (2011) (quoting *United States v. Playboy Entm't Grp.*, 529 U.S. at 818 (2000). Where strict scrutiny is applied to a content-based regulation, the government bears "an especially heavy burden." *Reno v. American Civil Liberties Union*, 521 U.S. 844, 879 (1997). The law does not itself explain its purpose or what interest it addresses. What government purpose is *compelling* enough to justify stopping speech at *all* events next to *all* state property *before it occurs*, yet irrelevant to indistinguishable sidewalks and streets elsewhere in Jackson, and to indistinguishable sidewalks and streets next to state property outside of Jackson? The law is either overinclusive—burdening more speech than is justified—or underinclusive—regulating incompletely, ineffectively, or unjustifiably treating similarly situated speech differently—or both.

For example, in *Brown v. Entm't Merchs. Ass'n*, the Supreme Court applyied strict scrutiny to strike down a law that prohibited the sale or rental of "violent video games" to minors. 564 U.S. at 801-02 (2011). After assessing a wide range of asserted government purposes related to protecting childen's and familys' health and wellbeing, the court found the law was, among other things, (1) underinclusive, in not precluding access to violence in other forms; and (2) overinclusive, in abridging the rights of minors whose parents thought that such games were

---

[4] Furthermore, because the overall bill relates to the Capitol Police jurisdiction in Jackson and specifically names the Chief of the Capitol Police, the written permission requirement appears to restrict speech next to state government buildings only in Jackson, and not next to state government buildings anywhere else in Mississippi.

harmless. *Id*. Underinclusiveness also concerns courts because it can evidence an impermissible government purpose. The Court explained that the regulation "is wildly underinclusive when judged against its asserted justification, which in our view is alone enough to defeat it," as "[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Id*.

Many of the factors just discussed demonstrate that S.B. 2343 does not further a compelling or even substantial governmental interest. For example, the City of Jackson's permit scheme already regulates marches and many other events on city sidewalks and streets, and criminal statutes and ordinances already govern the conduct of people having events in traditional public forums, whether or not a permit is required under the City of Jackson scheme. Nothing has happened to demonstrate that these are no longer sufficient. The state cannot prove the restriction is "actually necessary to achieve" a compelling government purpose. *United States v. Alvarez*, 567 U.S. at 725 (citations omitted); *see also generally, e,g., Schneider v. State*, 308 U.S. 147, 164-65 (1939) (striking down an ordinance regulating pamphleteering in part because of the adequacy of existing criminal laws to address the government's asserted concerns: "Frauds may be denounced as offenses and punished by law," and "[t]respasses may similarly be forbidden," so "abridge[ing] the freedom of speech" is not a substitute for enforcing criminal laws, even if doing so is "less efficient and convenient.").

**B. The Law Is Facially Invalid Because It Does Not Further a Substantial Government Purpose that is Unrelated to Suppressing Speech as Required Under The First Amendment and The Fourteenth Amendment Equal Protection Clause.**

Traditional public forums "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens." *Hague v.*

*C.I.O.*, 307 U.S. 496, 515-16 (1939). When expressive activities, like parades and rallies, take place in quintessential public fora, such as streets and sidewalks, the government's ability to permissibly restrict expressive conduct is extremely limited." *United States v. Grace*, 461 U.S. at 177.

When a law regulates conduct and burdens speech, it must generally satisfy intermediate scrutiny, which requires that the government's purpose be unrelated to the suppression of speech. *See generally United States v. O'Brien*, 391 U.S. 367, 377 (1968) (providing that if a regulation burdens speech, "the governmental interest [must be] unrelated to the suppression of free expression"); *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984) ("[A] reviewing court [must] determin[e] whether the actual objective is related to the suppression of speech."). If the government purpose *is* related to the suppression of speech, the law is invalid. There is no further inquiry into whether a regulation is sufficiently tailored to further a constitutionally inadequate government purpose.

If the law *is not* related to the suppression of speech, the government bears the burden of proof to establish that the government's purpose is substantial. *Board of Trustees of State Univ. of N. Y. v. Fox*, 492 U.S. 469, 480 (1989) ("The State bears the burden of justifying its restrictions . . ."); *Greater New Orleans Broadcasting Assn., Inc. v. United States*, 527 U.S. 173, 183 (1999) (noting that, where intermediate scrutiny is applied, "The Government bears the burden of identifying a substantial interest and justifying the challenged restriction"); *Ward v. Rock Against Racism*, 491 U.S. at 799 (the regulation must "'promote[] a substantial government interest'") (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)).

The substantial government purpose asserted must be its actual purpose—not merely a reasonable or rational purpose, or one the state is merely legally entitled to pass legislate to achieve.

14

*See, e.g., Edenfield v. Fane*, 507 U.S. 761, 768 (1993) (explaining, regarding the less speech protective intermediate scrutiny test for commercial speech, that courts "must identify with care the interests the State itself asserts," because "[u]nlike rational basis review," a substantial government purpose analysis "does not permit us to supplant the precise interests put forward by the State with other suppositions," and a court cannot "turn away if it appears that the stated interests are not the actual interests served by the restriction.") (citing *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 730 (1982).

If the government's *actual* purpose is also *substantial*, the challenged restriction must also be a narrowly tailored to further that purpose and leave open ample alternative channels for speech. "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (citation omitted).

S.B. 2343's prohibition on speech on public sidewalks and streets is invalid on its face because it does not further a substantial government purpose and/or it is related to suppressing speech. The Supreme Court has ruled that governments have no reason, let alone a substantial one, to treat city sidewalks next to government buildings any differently from other city sidewalks. *See, e.g., United States v. Grace*, 461 U.S. at 179-81 (invalidating a content neutral statutory prohibition on picketing and leafletting on the sidewalks around the Supreme Court building and grounds). The Court reasoned: "The sidewalks comprising the outer boundaries of the Court grounds are indistinguishable from any other sidewalks in Washington, D. C., and we can discern no reason why they should be treated any differently." *Id*. at 179.

The Supreme Court has struck down as facially unconstitutional prior restraints containing fatal flaws which are similar to those found in S.B. 2343's differential treatment of speech on city sidewalks and streets. *See, e.g., Cincinnati v. Discovery Network, Inc.,* 507 U. S. at 429; *United*

*States v. Grace*, 461 U.S. at 179-81 ( "We are convinced . . . [that the ban on] specified communicative activity on the public sidewalks around the Court grounds[] cannot be justified as a reasonable place restriction . . . .  [It] is unconstitutional because it does not sufficiently serve those public interests that are urged as its justification.").

The Fifth Circuit also rejected a city permitting scheme because the government fatally undermined its own stated interest in regulated targeted conduct by excluding from regulation conduct which was indistinguishable from that which the government sought to restrict. *Knowles v. City of Waco*, 462 F.3d 430 (5th Cir. 2006). The Court examined the scheme's exceptions under the First Amendment and the Equal Protection Clause and found the permitting scheme was an "unconstitutional time, place, and manner regulation[]" because the stated exceptions for school children and a government entity meant the Court could not "accept the contention that traffic control is a substantial interest" justifying the city's parade permitting scheme. *Id.* at 436-437, 513.

In S.B. 2343, all sidewalks and streets in the city of Jackson are excluded from regulation except those next to property owned or occupied by state government entities or officials. Also, the law only applies to sidewalks and streets next to government buildings which are in Jackson[5]— and not elsewhere in Mississippi.  As in *Knowles*, the state may assert a substantial government purpose, for example, having to do with safety and security. However, such an assertedly substantial interest is likewise fatally undermined by the gaping exclusion of every other property owned or occupied by the state or its officials, and the exclusion of every sidewalk and street in Jackson except those next to government buildings.

---

[5] Only the Chief of Capitol Police and the Commissioner of Public Safety, who appoints the Chief, can deny or authorize events next to state government buildings under S.B. 2343. S.B. 2343 expanded the jurisdiction of the Capitol Police from downtown Jackson (the Capitol Complex Improvement District, or CCID) to the entire City of Jackson. While the statutory language identifying where the prior restraint applies is absent, S.B. 2343 is generally about the powers of the Capitol Police within the City of Jackson, and not elsewhere in Mississippi, where they lack jurisdiction.

When assessing a government's asserted purpose in passing a law which governs conduct and burdens speech, courts often look at whether the conduct sought to be controlled is already being regulated by other means. In this case, the City of Jackson has effectively and successfully managed competing simultaneous uses of Jackson's public sidewalks and streets through its special events permitting scheme. The City of Jackson's special events law is detailed, includes a range of sections, permits are coordinated by a committee of City of Jackson stakeholders and city and county law enforcement representatives, it includes a schedule of deadlines and a breaking news exception, provisions for route and site modifications, requirements for insurance and indemnification, it provides an appeal process to the Board of Supervisors, and it contains a range of explicit standards and safeguards which are hallmarks of a constitutional special events permitting scheme. *See, e.g.,* City of Jackson Ord. No. 2000-29(14), §§ 1-20. As the First Amendment requires, the scheme does not unconstitutionally burden peaceful protesters on city sidewalks with a permit requirement if they are assembling in small or moderate numbers without blocking pedestrians.

State and local laws also already criminalize disruptive conduct on city sidewalks and streets targeted by S.B. 2343. State and local law already prohibit conduct which could endanger passersby, or which might simply prohibit simultaneous legitimate uses of city sidewalks and streets next to state property. These laws already regulate noise levels, littering, tobacco use, and the display of firearms. If, for example, the state asserts that its substantial government interest is in safety and security of people in those places, the existence of a comprehensive criminal code which already regulates expressive and non-expressive conduct on city sidewalks and streets next to government buildings fatally undermines *the assertedly substantial nature* of that otherwise entirely rational government interest.

17

Safety and security are reasonable government interests that would justify many kinds of laws subject to rational basis review.  But rational basis review does not apply here.  Courts are required in these cases to look with suspicion upon a government's asserted substantial interest in burdening speech. When the government creates a statutory classification that burdens the fundamental right of expression in a public forum, "the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." *Carey v. Brown*, 447 U.S. 455, 461-62 (1980); *see also Police Dep't of Chicago v. Mosely*, 408 U.S. 92 (1972).

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. S.B. 2343 discriminates among speech related activities in a public forum. It treats similarly situated speech—all speech on public city sidewalks and streets in Jackson—differently depending on whether the street or sidewalk is adjacent to a property owned or occupied by the state government or a state government official. S.B. 2343 makes at least two classifications that burden speech. The first is between all sidewalks and streets in Jackson and those sidewalks and streets which are next to certain properties which state officials occupy.  The second classification is between the state property-adjacent streets and sidewalks in Jackson that the law regulates and all other state property-adjacent streets and sidewalks statewide—except for within Jackson—that the law does not regulate.

The ways in which S.B. 2343's prior restraint are underinclusive and overinclusive cannot be addressed, let alone cured, by even the most narrowing regime of agency-promulgated rules and regulations because the distinctions at issue, listed above, will not change with further clarification. Certain city sidewalks and streets in Jackson are regulated and not others; sidewalks

18

and streets adjacent to government properties in Jackson are regulated and not others. *See, e.g.,*

*Carey v. Brown*, 447 U.S. at 465 ("The apparent overinclusiveness and under inclusiveness of the

statute's restriction would seem largely to undermine [the government's] claim that the prohibition

of all nonlabor picketing can be justified by reference to the State's interest in maintaining domestic

tranquility.").

**C.  In the Alternative, the Prior Restraint Will Violate Plaintiffs' Rights if Implemented Because of Additional Constitutional Infirmities, Including its Vagueness, Overbreadth, and the Unbridled Discretion it Grants Officials; It Should Be Enjoined Pending an Opportunity for the Court to Review Any Rules and Regulations Promulgated.**

As of the date of filing, the Department of Public Safety had not notified the Secretary of

State that it had begun rulemaking, as they must do if they are rulemaking.[6] It is therefore not

possible for the agency to complete a fulsome rulemaking process, with a public hearing and

comment period, with sufficient lead time before the law's July 1, 2023, effective date, before

which Plaintiffs must request Defendants' permission and, if granted, timely promote their July

2023 protest events. They are currently prevented from doing so because they fear subjecting

themselves and others to arrest and imprisonment. *See generally, e.g.,* Bennett-Scott Decl., ¶ 16-

20; Branch Decl., ¶ 16-20; Holmes Decl., ¶ 16-20; Lumumba Decl., ¶ 16-21. S.B. 2343 is even

silent regarding how Plaintiffs ought to ask Commissioner Tindell or Chief Luckey for their

written authorization to speak. Laws that provide unbridled discretion to government officials and

---

[6] *See, e.g.* "Secretary of State Administrative Bulletin Search—Search Results for All Department of Public Safety Bulletins," *available at* https://www.sos.ms.gov/regulation-enforcement/administrative-bulletin (last visited June 3, 2023). Note that, in the most recent previous rulemakings, several months pass between the proposed date and effective date. For example, the most recent DPS filing on the Bulletin involved amendments to its Public Records Policy Administrative Code. Amendments were proposed in September 2020, but withdrawn in November 2020. Amendments were proposed again in December 2020, and a revised version of those amendments went into effect in April 2021 after being adopted in March 2021. The next most recent filing involved the adoption of new rules concerning licensing standards for youth detention facilities. The new rules were proposed on September 24, 2019, and became effective on December 28, 2019, more than three months later.

19

are overbroad and vague chill protected speech, and S.B. 2343 is and has been chilling Plaintiffs' speech.

S.B. 234 is unconstitutionally overbroad.[7] It prohibits, on its face, a substantial amount of First Amendment protected speech activities that cannot constitutionally be subject to the prior restraint, such gathering in small groups to pass out leaflets to passersby or to peacefully assemble next to state government buildings. Laws infringing "in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order," as "[i]n this sensitive field, the State may not employ 'means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.'" *Carroll v. President & Comm'rs of Princess Anne County,* 393 U.S. 175, 183 (1968).

S.B. 2343 is also unconstitutionally vague.[8] "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined," because "vague laws may trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must

---

[7] A statute is overbroad if it "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (internal quotation marks omitted). The First Amendment overbreadth doctrine supports facial invalidation even if the challenge is brought by a party whose own conduct may be unprotected; the very existence of some broadly written statutes may have a deterrent effect on protected speech which cannot be justified. *See, e.g., Thornhill v. Alabama*, 310 U.S. 88 (1940). S.B. 2343 is triggered by "any event." The prior restraint contains a disjunctive "or," and creates two different scenarios which trigger the need for prior written authorization. The second scenario regulates "any event" which may hinder ingress and/or egress from any government-owned or occupied property that takes place *anywhere except* on streets and sidewalks adjacent to state government property. If applied to events inside government buildings, it could encompass a well-attended court hearing if a observers created a line at the metal detector. If applied to events outside but not on adjacent sidewalks or streets, it could apply to an event at a church downtown which, if well-attended, may have a purely remote effect on ingress and/or egress to nearby government buildings.

[8] The void-for-vagueness doctrine and the unbridled/unfettered discretion doctrine is rooted in Fourteenth Amendment Due Process Clause jurisprudence. Both can support facial invalidation. S.B. 2343 regulates "any event" which may hinder ingress and/or egress from any government-owned or occupied property that takes place *anywhere except* on streets and sidewalks adjacent to state government property. This could mean that the effects of other peoples' activities, combined with yours, may one day require you to obtain prior written authorization, but another day not.

provide explicit standards for those who apply them." *Id.* Vague laws also impermissibly chill constitutionally protected speech. Vague laws burdening speech create uncertainty which "inevitably lead[s] citizens to 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." *Id.*

It is impossible to discern from S.B. 2343's one-sentence prior restraint what conduct is prohibited. For example, S.B. 2343 provides no notice of which public, private, and residential properties are owned or occupied by Mississippi state entities and officials. It is silent regarding whether "any event" refers to the number of people gathered or a different indicator, and it is unclear whether "any event" could encompass a few people picketing by the Capitol or a well-attended event at a church downtown that shares a sidewalk with government property. S.B. 2343 also provides no fair warning regarding when an event *not adjacent to a state building* "can reasonably be expected to . . . otherwise hinder ingress . . . or egress" to state buildings. A law is "unconstitutionally vague on its face [when] it encourages arbitrary enforcement by failing to describe with sufficient particularity what a [person] must do in order to satisfy the statute*." Kolender v. Lawson*, 461 U.S. 352, 361-62 (1983). S.B. 2343 is unconstitutionally vague.

The law also grants Defendants unbridled and unfettered discretion. "[I]nvesting governmental officials with boundless discretion over access to the forum violates the First Amendment." *Freedom from Religion Found., Inc. v. Abbott*, 955 F.3d 417, 427 (5th Cir. 2020) (citation omitted). In this case, the naked prior restraint provides enforcing authorities with no standards, safeguards, or guideposts by which to ensure enforcement is not arbitrary or based on animus regarding the speaker or the message. *Id.* ("[T]he Court has long held that 'law[s] subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, [are] unconstitutional.'")

(citing *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150-51 (1969)). The prohibition against prior restraint schemes like S.B. 2343's, which give authorities unbridled, or unfettered, discretion in enforcement, is related to the First Amendment prohibition against laws burdening speech which are viewpoint based. *Id.* ("[T]he constitution requires . . . neutral criteria to [e]nsure that the licensing decision is not based on the content or viewpoint of the speech being considered.") (citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 760 (1988)).

S.B. 2343 goes into effect on July 1, 2023, and might be enforced by a sentence in a Mississippi state prison. The agency cannot engage in a fulsome rulemaking procedure, including a hearing and comment period, prior to the time Plaintiffs would be required to attempt to comply with the scheme and, if authorized, promote it in advance of their planned July 2023 protest events. Therefore, even if the law is not enjoined for the reasons set forth in Sections I and II, it should be enjoined unless and until this Court has an opportunity to review any subsequent rules and regulations and determine if they cure the constitutional problems posed by the prior restraint contained in this new law.

## II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE COURT DECLINES TO ISSUE THIS INJUNCTION.

The Plaintiffs want to protest as they have in the past, but they do not want to subject themselves or their communities to a protest restriction that they believe is unlawful. However, Plaintiffs are afraid of harming themselves and those who protest with them, which include children, grandparents, and people on parole, by publicizing an event at which participants risk arrest and detention or incarceration for failure to satisfy S.B. 2343.

Because of their fear, they have refrained from communicating in critical ways with others regarding the Coalition's July 2023 actions. For example, they have already created a digital flyer to promote July events to organizations and community members who may wish to learn about,

participate, or contribute to them. However, their fears about S.B. 2343 have prevented them from distributing it. *See generally, e.g.,* Bennett-Scott Decl., ¶ 16-20; Branch Decl., ¶ 16-20; Holmes Decl., ¶ 16-20; Lumumba Decl., ¶ 16-21.

Plaintiffs will be harmed in the absence of an injunction because Mississippi's prohibition of unauthorized events on sidewalks and streets near state government property violates Plaintiffs' well-established First Amendment rights of freedom of speech, assembly, association, petition, and for those who pray as part of their protest, free exercise of religion. The "loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d at 338; *see also Elrod v. Burns*, 427 U.S. 347, 373-374 (1976).

## III. DEFENDANTS WILL SUFFER NO IRREPARABLE HARM IF THIS INJUNCTION ISSUES.

If the injunction issues, the government will be in the same position it has been in for years, when peaceful protesters' activities on public property have been adequately managed by the City of Jackson's permitting scheme, as discussed above. While "[t]he State absolutely has an interest in enforcing the law," that "interest yields when the law at issue violates the Constitution." *Campaign for S. Equal. v. Bryant*, 64 F. Supp. 3d 906, 951 (S.D. Miss. 2014), aff'd, 791 F.3d 625 (5th Cir. 2015).

## IV. GRANTING THE INJUNCTION WILL SERVE THE PUBLIC INTEREST.

S.B. 2343 restricts political speech and prayer in traditional public forums absent a constitutionally adequate purpose. The public interest will be served if this Court enjoins S.B. 2343. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013).

The public will not be served by allowing DPS to expend time and resources generating rules and regulations to effectuate a standardless prior restraint on speech that is likely unconstitutional. There can be no "presumption that the government will act in good faith" when exercising discretion in this area of the law. *Freedom From Religion Foundation*, 955 F.3d at 429 n.2.

## CONCLUSION

S.B. 2343 the prospect of arrest, prosecution, conviction, and incarceration in a state prison, all have a chilling effect on the Plaintiffs' speech. Absent an injunction, Plaintiffs will suffer irreparable harm because they will be forced to navigate this legal minefield blind or be silenced. For all of the foregoing reasons, the Court should grant this motion and issue a preliminary injunction to prohibit enforcement of S.B. 2343's prohibition on public protests by state government buildings without the written permission of Commissioner Tindell or Chief Luckey.

Dated: June 3, 2023

/s/ Paloma Wu
Paloma Wu (Miss. Bar No. 105464)
MISSISSIPPI CENTER FOR JUSTICE
210 E. Capitol Street, Ste 1800
Jackson, MS 39201
(601) 709-0858
pwu@mscenterforjustice.org

Cliff Johnson (Miss. Bar No. 9383)
MACARTHUR JUSTICE CENTER
University of Mississippi School of Law
481 Chucky Mullins Drive
University, MS 38677
(662) 915-6863
cliff.johnson@macarthurjustice.org

*Attorneys for Plaintiffs*