## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| JXN UNDIVIDED COALITION; MISSISSIPPI VOTES; PEOPLE'S ADVOCACY INSTITUTE; MISSISSIPPI POOR PEOPLE'S CAMPAIGN; BLACK VOTERS MATTER; RUKIA LUMUMBA; DANYELLE HOLMES; AREKIA BENNETT-SCOTT,<br><br>    Plaintiffs,<br><br>        v.<br><br>SEAN TINDELL, in his official capacity as Commissioner of the Mississippi Department of Public Safety; and BO LUCKEY, in his official capacity as Chief of the Capitol Police, a unit of the Mississippi Department of Public Safety,<br><br>    Defendants. | Civil Action No. 3:23-cv-351-TSL-RPM<br><br><br><br>ORAL ARGUMENT REQUESTED |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

In eight days, it will be illegal for Mississippians seeking to exercise their First Amendment rights—including to protest or pray—to gather peacefully on public sidewalks and streets beside properties occupied by any state government official absent prior written permission from Defendants, who promise they will not provide it to anyone anytime soon, including Plaintiffs, who plan to continue protesting where S.B. 2343 proscribes it after the law goes into effect.

Both parties agree that S.B. 2343 should not be enforced when it becomes effective on July 1, 2023. They merely disagree on the means by which to maintain the status quo. Only a court order can prevent S.B. 2343 from being enforced on and after July 1, 2023—Defendants simply lack the legal authority to do so. Therefore, when Defendants filed Defendant Tindell's declaration, Plaintiffs speech did not stop being chilled.

Because Plaintiffs speech continues to be chilled, despite Commissioner Tindell's presumably earnest—but legally ineffective—promise to maintain the status quo, Plaintiffs maintain an injury sufficient to establish Article III standing to sue and show they will be irreparably harmed absent a preliminary injunction. This conclusion is supported by binding Supreme Court and Fifth Circuit precedent providing what facts Plaintiffs are *and are not* required to prove to procced on a pre-enforcement challenge to seek preliminary relief from a law restricting speech.

Commissioner Tindell's declaration establishes that Defendants do not have time-sensitive plans to implement S.B. 2343. His declaration makes clear that Defendants are have no emergent need to enforce S.B. 2343. Defendants articulate no legislative purpose which must be furthered anytime soon through rulemaking. Defendents will therefore suffer little to no harm—and certainly no irreparable harm—if this Court enters an injunction maintaining the status quo, including by enjoining rulemaking, until after a decision on the merits.

I.      **Only A Court Order Can Guarantee That The Status Quo Will Be Maintained On And After July 1, 2023, Which Both Parties Want.**

Defendants attempt to give Plaintiffs comfort that they will not be punished for their speech pursuant to S.B. 2343's prior permission requirement beginning July 1, 2023. *See* Def. Tindell Decl. at ¶ 11; Def.'s Mem. Opp. Prelim. Inj. 2-3 (hereinafter Def.'s Mem.) (providing that "[t]he process of proposing and adopting these rules and regulations under Mississippi's Administrative Procedures Law has not even begun"; that "[u]ntil that process is complete and the regulations go into effect, DPS and the Capitol Police will not require event organizers to obtain written approval and will not attempt to enforce S.B. 2343(1)(6)(c)"; and that "[t]he regulations DPS is tasked with developing will not be adopted before August 1, 2023."). Unfortunately, Defendants simply lack

2

the legal authority to promise Plaintiffs they will maintain the status quo. Only a court order can do that.

Nothing in Defendant Tindell's declaration or Defendants Response prevents local prosecutors, courts, and local law enforcement from enforcing S.B. 2343—including against Plaintiffs—beginning July 1, 2023. It is conceivable they would arrest, prosecute, and convict Plaintiffs for disturbing the peace if they protest and fail to produce written permission. No declaration from either of the defendants can prevent such harm. *See generally, e.g.*, *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 395 (1988) (explaining that because "the Attorney General does not bind the state courts or local law enforcement authorities, [the U.S. Supreme Court] was unable to accept her interpretation of the law as authoritative.").

## II.    Defendants Admit To Having No Plan Or Path To Timely Implement S.B. 2343; They Therefore Will Not Be Prejudiced By A Court Order Maintaining The Status Quo.

A court order maintaining the status quo is uniquely appropriate in this case. First, Defendants do not dispute Plaintiffs' assertion that S.B. 2343, on its face, cannot be constitutionally implemented, *see, e.g.*, Pl.'s Mem. Supp. Prelim. Inj. 19-22 (hereinafter Pl.'s Mem.); Def.'s Mem. 3 (explaining that "it is possible" rulemaking could address Plaintiffs' claims that S.B. 2343 is unconstitutional but not disputing that it is unconstitutional). Defendants have no concrete plans to implement S.B. 2343 at any particular time in the near future, *see. e.g.*, Def.'s Mem. 2 (explaining that rulemaking is multi-phasic, each phase takes time, and that the process "has not even begun"); *id*. 4-7.

While state law allows for expedited implementation of agency rules in an emergency, *see* Miss. Code Ann. § 25-43-3.108 (providing an exemption from public rule-making procedures for temporary rules when the agency finds imminent peril to public health, safety, or welfare requires it), Defendants make no claim that there is any need to utilize that option in regards to S.B. 2343.

Def. Tindell's Decl. at ¶¶ 4-11 (describing the non-emergency rulemaking procedure as that which DPS plans to use to promulgate regulations effectuating S.B. 2343); Def.'s Mem. 5-7 (same). The standard rulemaking process the State says it will undertake to satisfy the legislative demand contained in S.B. 2343 has generally taken DPS months to complete.[1]

Because Defendants declare they have not yet begun rulemaking and do not plan to expedite the process, it follows that Defendants will not be prejudiced by a court order delaying rulemaking to effectuate a law which neither party claims is facially constitutional. In this way, this matter is similar to *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), in which the Fifth Circuit determined Texas was entitled to the preliminary injunction it sought after comparing the state's assertions that it would suffer specific injuries if the stutus quo was not preserved, as compared to the United States' relatively vague assertions about generalized harms it would suffer if subject to an injunction. *See also, e.g., Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535 (5th Cir. 2013) (finding in a First Amendment case that a government's vague or unsupported allegations that an injunction would cause it harm were unconvincing).

### III. When Commissioner Tindell Filed His Declaration, It Did Not Stop Plaintiffs' Speech from Being Chilled; Therefore, Plaintiffs Maintain An Injury Upon Which They Can Sue and Seek Preliminary Relief.

Defendants argue that Commissioner Tindell's declaration has the legal effect of preventing Plaintiffs' speech from being chilled. Plaintiffs address below only a few of the many reasons this is not true.[2] Only an order from this Court, not a "statement of intent" from

---

[1] *See, e.g.,* "Secretary of State Administrative Bulletin Search—Search Results for All Department of Public Safety Bulletins," *available at* https://www.sos.ms.gov/regulation-enforcement/administrative-bulletin (last visited June 3, 2023).

[2] Other reasons include that Plaintiffs have no way of effectively transmitting to all of their members that a lawyer from the Attorney General's office filed a declaration from Commissioner Tindell in which he said Capitol Police would not arrest people for not having prior authorization required by S.B. 2343 beginning July 1, 2023. Also, if a member of the Capitol Police arrests someone contrary to the Commissioner Tindell's non-enforcement directive,

4

Commissioner Tindell, can provide Plaintiffs the comfort needed to speak freely and without objective fear of prosecution or retribution.

Defendants do not argue that S.B. 2343, which targets speech for a prior restraint on the basis that it is spoken next to places occupied by state officials, is constitutional. Defendants do not claim that S.B. 2343 can now, or will in the future, be constitutionally applied to Plaintiffs. Instead, Defendants argue that Plaintiffs lack standing to sue or seek preliminary relief *until after Defendants have adopted and can enforce* whatever speech-restricting scheme they promulgate without any standards or legislative purpose to guide them.

"In pre-enforcement cases alleging a violation of the First Amendment's Free Speech Clause, the Supreme Court has recognized that chilled speech or self-censorship is an injury sufficient to confer standing." *Barilla v. City of Hous*., 13 F.4th 427, 431 (5th Cir. 2021). Plaintiffs who bring pre-enforcement freedom-of-expression challenges benefit from the presumption of a substantial threat of future enforcement absent compelling contrary evidence. *See, e.g., Barilla,* 13 F.4th at 431-32 (5th Cir. 2021). Defendants' promise that they intend to enforce S.B. 2343 in the future but not immediately does not undermine Plaintiffs' standing to sue or seek preliminary relief. *See, e.g.*, *id.* (explaining that, "when dealing with pre-enforcement challenges to recently enacted . . . statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence," and the absence of "immediate danger of arrest" does not qualify as compelling

---

Commissioner Tindell lacks the authority to undo the harm. He cannot, for example, make a local prosecutor drop charges. Finally, Plaintiffs have provided sworn testimony that they are in part comprised of individuals who are under supervision and cannot risk parole revocation subsequent to a protest-related arrest due to noncompliance with S.B. 2343 that Commissioner Tindell lacks the ability to prevent and the authority to undo. In sum, only a court order can maintain the status quo, which Defendants wish to do, yet cannot through a declaration from Commissioner Tindell.

contrary evidence); Tindell Decl. at ¶ 11 (regarding their intent to enforce S.B. 2343 in the future but not immediately).

The Supreme Court and Fifth Circuit do not require that Plaintiffs, who bring a pre-enforcement First Amendment challenge to a law speech restricting, must wait until after Defendents are enforcing S.B. 2343 to have standing to sue or seek preliminary relief enjoining its implementation. For example, in *Speech First v. Fenves*, 979 F.3d 319 (5th Cir. 2020), the Fifth Circuit reversed a lower court's finding that Plaintiffs lacked pre-enforcement standing to challenge speech restrictions when the challenged policy was no longer in force because it conceivably could be revived in the future (despite Defendant's sworn testimony that it would not be) and the replacement policy included vague terms. In reversing the district court's decision, the Fifth Circuit explained: "The chilling effect of allegedly vague regulations, coupled with a range of potential penalties for violating the regulations, was, as other courts have held, sufficient 'injury' to ensure that Speech First 'has a 'personal stake in the outcome of the controversy.'" *Id at 322*. (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Defendants argue that because they may still be rulemaking after but "not [] prior to August 1, 2023," Plaintiffs lack standing to sue and seek preliminary relief. Def. Tindell Decl. at ¶ 11 (providing that rulemaking may or may not be complete by August 1, 2023); *see also* Def.'s Mem. 11-18. As the Fifth Circuit has explained, "'A plaintiff who mounts a pre-enforcement statutory challenge on First Amendment grounds 'need not show that the authorities have threatened to prosecute him . . . ; the threat is latent in the existence of the statute.'" *Speech First*, 979 F.3d at 336 (5th Cir. 2020) (quoting *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003)).

Defendants' representation that they may enforce S.B. 2343 against Plaintiffs beginning August 1, 2023, does not undermine in the least Plaintiffs' allegations that their speech is chilled—

an injury which is sufficient to establish Article III standing to sue and seek preliminary relief. In *Speech First*, when the Fifth Circuit reversed the district court's finding that Plaintiffs' speech was not chilled because the policies they challenged were not being enforced against them, the Fifth Circuit explained that, to proceed, Plaintiffs' were only required to establish that the speech-restricting policy was likely to be enforced against them in the future. *Speech First, Inc.*, 979 F.3d at 338. Specifically, the Court explained:

> "[T]he existence of the University's policies, which the University plans to maintain as far as a federal court will allow it, suffices to establish that the threat of future enforcement, against those in a class whose speech is arguably restricted, is likely substantial. And such likelihood is all that is necessary to establish the final prong of injury-in-fact for standing to seek a preliminary injunction in this kind of case."

*Id*.

In this case, Defendants have *promised* they will enforce S.B. 2343 in the future—which is a more compelling case than Plaintiffs in *Speech First* could provide. *See, e.g.*, Def. Tindell Decl. at ¶ 11 (providing that DPS and Capitol Police will enforce S.B. 2343 in the future and as soon as August 1, 2023, if rulemaking is complete); Def.'s Mem. 11-18. Because Commissioner Tindell did not disavow—and actually declared—his intent to enforce S.B. 2343 in the future, Plaintiffs have standing to sue. *See* Def. Tindell Decl. at ¶ 11 (providing that Defendents intend to enforce S.B. 2343 in the future and not claiming that S.B. 2343 cannot be enforced by local law enforcement or prosecutors in the meantime).

Plaintiffs' claims are ripe, and they have pre-enforcment standing to challenge S.B. 2343 on its face. Only a court order preliminarily enjoining S.B. 2343 until ajudication of Plaintiffs' claims on the merits can achieve the goal that both parties seek: maintainence of the status quo.

**IV.     Because Defendants Also Do Not Meet Their Burden Of Proving That S.B. 2343 Is Constitutional, Plaintiffs Are Entitled To Preliminary Relief.**

Defendants bear the burden of proof in a First Amendment case, including at the preliminary injunction stage. In *Byrum v. Landreth*, 566 F.3d 442, 448 (5th Cir. 2009), the Fifth Circuit reversed a district court's denial of a preliminary injunction to Plaintiffs pre-enforcement challenge to a law restricting commercial speech, the constitutionality of which is analyzed according to the *Central Hudson* test, which is *much less* protective of speech than the traditional public forum test which S.B. 2343 must satisfy. *In Byrum,* the Fifth Circuit explained:

> [W]hen considering the likelihood of success, the district court should have inquired whether there is a sufficient likelihood the State will ultimately fail to prove its regulation constitutional…Applying the proper standards, we have little difficulty in concluding that appellants are likely to succeed on their claim because the State has not shown its ability to justify the statutes' constitutionality.

*Id*. at 446; *see also id.* at 448 (providing that, "[i]f the State fails to sustain any of *Central Hudson* prongs, the [Plaintiffs] have succeeded in showing a substantial likelihood of success on the merits.") (citation omitted).

In this case, Defendants do not argue that they can prove S.B. 2343 furthers a legislative purpose that is substantial, compelling, and unrelated to suppressing speech under First Amendment strict scrutiny or intermediate scrutiny under the First Amendment and/or Fourteenth Amendment Equal Protect Clause. Defendants do not suggest a legislative purpose exists which provides any justification, let alone a constitutional one, for its existence, even though as a prior restraint S.B. 2343 bears a heavy burden against its constitutional validity. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

Defendants do not claim that S.B. 2343 as written does not violate Plaintiffs' First or Fourteenth Amendment rights, they merely suggest that "it is possible" that "Plaintiffs' objections to S.B. 2343 will be addressed" by regulations promulgated to implement S.B. 2343, which

Defendants do not attempt to argue is constitutional on its face. Def.'s Mem. 4; *see also, e.g.*, Def.'s Mem. 4 (suggesting that rulemaking to effectuate S.B. 2343 may not address Plaintiffs' constitutional claims—which they do not argue against); Def.'s Mem. 15 (arguing that this Court should "deny Plaintifffs' motion for a preliminary injunction" not because S.B. 2343 is constitutional as written but because Commission Tindell promises DPS will not to enforce it as written).

The parties agree that, "Essentially, all this Court has before it is a permit requirement but no permit scheme." Def.'s Mem. 13. This is the crux of one of the Plaintiffs' primary arguments in support of enjoining S.B. 2343 before rulemaking begins: (1) the agency must effectuate the law as written;3 and (2) as written, the law imposes the "evil"4 of a prior restraint on speech based on whether it is uttered beside properties occupied by state officials; this is unconstitutional. See Pl.'s Mem. 9-19 (arguing that S.B. 2343  violates the First and Fourteenth Amendments because it is a content-based law that does not further a compelling government purpose, and/or because it restricts speech without furthering a government purpose which is substantial and unrelated to the suppression of speech).

---

[3] Under state law, a state agency may not adopt rules which are inconsistent with the plain language of the statute it seeks to effectuate. *See, e.g., Dialysis Sol., LLC v. Miss. State Dep't of Health*, 31 So. 3d 1204, 1214 (Miss. 2010) (providing that an agency may only promulgate rules "consistent with" a statute it is effectuating.") "Statutory provisions control with respect to the rules and regulations promulgated by [an administrative agency]." *Id.* (internal quotation marks omitted). Also, "it is well settled that an administrative agency has no inherent powers," therefore "[an] agency may not make and adopt rules under the guise of 'implied power' which exceed or conflict with the authority granted it by statute." *Miss. Pub. Serv. Com. v. Miss. Power & Light Co.*, 593 So. 2d 997, 1003-04 (Miss. 1991). If "[t]he effect of [a] rule is to amend the statute," it "is not permissible." *Id.* at 1003. Executive agencies in Mississippi have only the narrow "[w]ithin the scope of its delegated authority" to "use its own experience, technical competence, specialized knowledge and judgement in the adoption of a rule." Miss. Code Ann. § 25-43-3.106. However, under no circumstances can an administrative agency, like DPS, "make rules and regulations which conflict with, or are contrary to, the provisions of a statute, particularly the statute it is administering or which created it." *Dialysis Sol., LLC v. Miss. State Dep't of Health*, 31 So. 3d at 1214.

[4] *See, e.g., Gelling v. Texas*, 343 U.S. 960, 960-61 (1952) (J. Douglas, concurring) (discussing the "evil of prior restraint[s]"); *see also, e.g., N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 276 (1964) ("[T]he attack upon [the Sedition Act's] validity has carried the day in the court of history.).

Therefore, the Parties agree to facts sufficient to find that Plaintiffs have a substantial likelihood of success on their claim that S.B. 2343 is unconstitutional and that this Court should enjoin its implementation, including rulemaking, prior to July 1, 2023. *See, e.g.*, *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions"); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B Nov. 1981) (The "loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction.").

For the forgoing reasons, Plaintiffs are entitled to entry of an order prior to July 1, 2023, to maintain the status quo until the Court ajudicates Plaintiffs' claims on the merits.[5] "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012).

## V.  In The Alternative, While Not Required Under Binding Precedent To Do So, Plaintiffs Attach Declarations Providing Clarity Regarding Their Previously Plead Plans To Protest In The Future As They Have In The Past.

Plaintiffs plan to continue engaging in expressive conduct past July of 2023 that is prohibited by S.B. 2343 absent prior permission. They previously referred to these plans in their declarations filed with their motion for a preliminary injunction.[6]

---

[5] Alternatively, Plaintiffs seek a preliminary injunction of the law pending review by the Court to determine if any subsequent rules and regulations can somehow cure S.B. 2343's additional constitutional infirmities, including that it does not give adequate warning of what activities it proscribes, nor does it set forth explicit standards for those who must apply it, and it substantially encompasses expressive activities that the state does not have the authority to regulate through imposition of a prior restraint. S.B. 2343 is therefore unconstitutionally vague, under the Fourteenth Amendment Due Proces Clause, and it violates the First Amendment by being overbroad and granting unbridled discretion to the administering and enforcing agency, DPS. *See* Pl.'s Mem. 19-22.

[6] *See, e.g.*, Bennett-Scott Decl., ¶ 11-12; Branch Decl., ¶ 11-12; Holmes Decl., ¶ 11-12; Lumumba Decl., ¶ 11-12 (providing several instances in recent years of declarants and their respective organizations "protested in and beside places occupied by Mississippi state entities or officials in Jackson, Mississippi"); *see also, e.g.,* Bennett-Scott Decl., ¶ 16; Branch Decl., ¶ 16; Holmes Decl., ¶ 16; Lumumba Decl., ¶ 16 (declaring that they as individuals and their

Plaintiffs never cabined or limited their future protest plans to July, 2023, in either their briefs or their declarations. The State mischaracterizes Plaintiffs' position by asserting they only provided facts about their future plans to protest in July of 2023. *Id*. While not required under Supreme Court and Fifth Circuit precedent that provides what facts Plaintiffs need and need not plead to establish that their speech is chilled, Plaintiffs, for the sake of clarity, attach as exhibits hereto additional declarations. They merely restate, with more detail, that Plaintiffs have ongoing plans to continue to engaging in expressive activities, including political speech and prayer, in and around places occupied by state government officials and entities, including from sidewalks and streets, in order to communicate their messages and fulfill their organizational missions during and after July of 2023. *See, e.g.*, Second Bennett-Scott Decl., ¶ 2; Second Branch Decl., ¶ 2; Second Holmes Decl., ¶ 2-4; Second Lumumba Decl., ¶ 2 ("The Coalition protested in and beside places occupied by Mississippi state entities or officials in Jackson, Mississippi during the 2023 legislative session, and we plan to do so in July, and every month leading up to and during the 2024 legislative session. For example, we plan to protest monthly on the sidewalk in front of the governor's mansion."); *see also, e.g.*, Second Bennett-Scott Decl., ¶ 4; Second Branch Decl., ¶ 4; Second Holmes Decl., ¶ 4; Second Lumumba Decl., ¶ 5 (Plaintiffs declaring that they as individuals and their respective organizations plan to both "co-organize Coalition events between now and the end of this year, during the 2024 legislative session and beyond" and "help publicize future Coalition actions in the weeks, days, and/or hours leading up to them.").

---

respective organizations "plan to continue to protest on sidewalks and streets in Jackson, beside state government owned and occupied buildings, in the future, including during July of 2023," and providing the "example" of their "plans to protest by such properties, including the State Capitol, the Mississippi Supreme Court, and the Governor's Mansion, during Coalition actions on July 6, 8, 18, and 27, 2023.") (emphasis added).

**CONCLUSION**

Only a court order enjoining S.B. 2343's prior permission requirement until ajudication of Plaintiffs' claims on the merits will allow Plaintiffs to continue planning and executing protest actions by properties occupied by state government officials without having their speech chilled because S.B. 2343 will go into effect on July 1, 2023.

Plaintiffs in this First Amendment case have plead facts sufficient under Supreme Court and Fifth Circuit law to establish their injury of chilled speech, which is in turn sufficient to establish both Article III injury and irreparable harm. Because the government did not argue, nor bear its burden to prove, that S.B. 2343's speech restriction furthers any compelling or substantial legislative purpose which is unrelated to the suppression of speech, the "permission requirement" is likely unconstitutional and should therefore be enjoined prior to rulemaking. No act of an executive agency can provide S.B. 2343 with a constitutionally adequate legislative purpose. Stated simply, the legislative infirmities of S.B. 2343 cannot be be fixed by Defendants.

By pleading that they have no concrete plans to begin or end rulemaking in the near future, Defendants have admitted they will suffer no prejudice if the Court enters an order maintaining the status quo. Plaintiffs are entitled to an order enjoining the prior permission provisions of S.B. 2343, including the directive to DPS to promulgate regulations to effectuate the law, which Defendants do not contend is constitutional on its face, and which DPS lacks the authority to rewrite.

Dated: June 23, 2023                                    /s/ Paloma Wu
                                                        Paloma Wu (Miss. Bar No. 105464)
                                                        Rob McDuff (Miss Bar No. 2532)
                                                        MISSISSIPPI CENTER FOR JUSTICE
                                                        210 E. Capitol Street, Ste 1800
                                                        Jackson, MS 39201
                                                        (601) 709-0858
                                                        pwu@mscenterforjustice.org
                                                        rmcduff@mscenterforjustice.org

                                                        Cliff Johnson (Miss. Bar No. 9383)
                                                        MACARTHUR JUSTICE CENTER
                                                        University of Mississippi School of Law
                                                        481 Chucky Mullins Drive
                                                        University, MS 38677
                                                        (662) 915-6863
                                                        cliff.johnson@macarthurjustice.org

                                                        *Attorneys for Plaintiffs*